# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**DAVID SANDERS,**                                  CASE NO. 3:19 CV 1785

     Plaintiff,

     v.                                              JUDGE JAMES R. KNEPP II

**CITY OF TOLEDO,**

     Defendant.                                **MEMORANDUM OPINION AND
ORDER**

## INTRODUCTION

This case arises out of Plaintiff David Sanders's claim that his current employer, Defendant City of Toledo, committed race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and Ohio Revised Code § 4112, *et seq*. The matter now before the Court is Defendant's Motion for Summary Judgment (Doc. 24), which is fully briefed. Also before the Court is Plaintiff's Motion for Leave to File Sur-Reply (Doc. 28), Plaintiff's Motion to Strike the Affidavit of Alan Bannister (Doc. 29), and Defendant's Motion for Leave to Amend the Affidavit of Alan Bannister Instanter (Doc. 30).

For the reasons set forth below, Defendant's Motion for Summary Judgment is granted, Defendant's Motion for Leave to Amend the Affidavit of Alan Bannister is granted, and all other motions are denied.

## BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, the background of this case is as follows:

Parties Involved

Plaintiff, who is African-American, was originally hired in 1999 by the City of Toledo ("the City" or "Defendant"). Plaintiff worked for Defendant in the Sewer and Draining Services Division ("Sewers") from 2011 until 2018. (Doc. 24-22, at 17). After the March 2018 events giving rise to this action, Plaintiff was involuntarily transferred to Defendant's Department of Public Service, performing mostly janitorial duties. *Id.* at 45. Plaintiff remains a full-time employee of Defendant.

Badreddine Complaint

On March 5, 2018, one of Plaintiff's coworkers, Julianne Badreddine, a Caucasian woman, filed a formal workplace complaint against Plaintiff. Therein, Badreddine complained of the following: (1) inappropriate and intimidating conduct dating back to a 2017 incident where Plaintiff "shout[ed]" at and "cornered" Badreddine in office hallway; (2) February 2018 confrontations regarding Plaintiff's absence from the qualified employee list for Alternate Heavy Machinery Operator positions; and (3) an incident on March 3, 2018, where Badreddine complained that Plaintiff urinated in public while behind a City Sewers vehicle and made inappropriate sexual gestures towards Badreddine, who was a disputed distance of about one-hundred yards away. (Doc. 24-3, at 1-3). On March 8, 2018, Plaintiff was served discipline charges by Defendant. (Doc. 24-23).

Ultimately, the Department of Human Resources found the charges of workplace intimation brought against Plaintiff to be substantiated based on the accounts of witnesses David Pratt, Kenneth Futey, Adam Zolciak, and F. Scott Lewandowski. (Doc. 24-3, at 5-9). Plaintiff was found to be in violation of Administrative Policy and Procedure #51 for workplace intimidation. *Id.* at 10.

2

Conversely, the events of March 3, 2018 were separately investigated by the Office of Diversity and Inclusion ("D&I"). (Doc. 25-13, at 15-16). The final report issued by D&I concluded that Badreddine's complaints against Plaintiff regarding the March 3, 2018 events were unsubstantiated for lack of witnesses. (Doc. 25-11, at 75-77). Notably, the D&I report does not reach the conclusion that Badreddine's claims were false. (Doc. 30-1, at ¶¶ 25-26).

 Plaintiff filed his own complaint against Badreddine on March 8, 2018. Plaintiff claimed Badreddine filed her complaints against him to prevent him from winning promotion. (Doc. 25-13, at 15-16). Plaintiff's theory was race-discrimination. *Id*. One of the D&I employees investigating the matter, Robin Wilson, conducted interviews with direct and character witnesses. *Id*. at 17. Wilson concluded Badreddine was "guilty" of race discrimination, and recommended Plaintiff be granted promotion with backpay, and for Badreddine to face discipline. (Doc. 25-3, at 4-5). After reviewing the interviews and evidence collected by Wilson during the course of her investigation, as well as the reports of other investigators, D&I ultimately rejected Wilson's conclusion, instead finding that neither Badreddine's nor Plaintiff's claims could be substantiated as they were the only two witnesses to the March 3, 2018 conduct. (Doc. 30-1, at ¶ 28). Of note – witness statements collected by Wilson substantiate the complaints of a violent outburst made against Plaintiff. (Doc. 25-3, at 8). None of the evidence shows Badreddine filed a false report. *See generally*, Doc. 25-3. Further, although not known to Wilson at the time of her draft report, Plaintiff at one point admits to urinating publicly on March 3, 2018 during a conversation he recorded with a City employee. (Doc. 24-40).

Other Complaints

Following Badreddine's March 5, 2018 complaint, other coworkers and supervisors brought a series of complaints against Plaintiff. These include complaints by four male employees accusing Plaintiff of a violent outburst at a union meeting on May 23, 2018, failure to guard an

expensive piece of City equipment on June 14, 2018, and the recording of conversations of City officials without consent. (Doc. 24-12). Defendant found each of these claims substantiated during the ordinary course of its internal investigations. Doc. 24-16; Doc. 24-17. Contrary to Plaintiff's vehement denial of the March 5, 2018 complaint, he offers little to no explanation for the subsequent complaints filed against him. *See, e.g.*, Doc. 25, at 18-20.

<u>Discipline</u>

As a result of the aforementioned events, Plaintiff provides evidentiary support describing three potential adverse employment actions Defendant took against him.

First, Plaintiff's "temporary" removal from Sewers on March 9, 2018 occurred four days after the Badreddine complaint and one day after Plaintiff filed his own complaint against Badreddine. (Doc. 25, at 19). Plaintiff was reassigned to the Division of Parks, Recreation and Forestry pending the outcome of the investigation. (Doc. 24-14). Further, although his base pay and benefits remained the same, the temporary move made Plaintiff ineligible for overtime. *Id.*

Second, on August 27, 2018, Plaintiff was formally transferred "for the good of the service" to the City's Division of Streets, Bridges and Harbors. (Doc. 24-19). The transfer document states Plaintiff was found in violation of (1) disruption of workplace; (2) misconduct; (3) violation of AP #51, "Work Place Violence Prevention"; (4) Retaliation; and (5) Conduct Unbecoming a City of Toledo Employee. *Id.* The listed violations were all in reference to complaints filed against Plaintiff alleging a violent outburst at a union meeting on May 23, 2018. *Id.* Alongside the transfer itself, Plaintiff sets forth evidence establishing a material change in his employment duties resulting from this transfer. Plaintiff argues the transfer removed him from the skilled bricklayer work upon which he built his career and desired to continue, and relegated him to menial janitorial work. (Doc. 24-20.) And although his pay and seniority remain unaffected as a result of the

4

transfer, opportunities for promotion and working overtime in his preferred area are diminished. (Doc. 24-22, at 56-57).

Third, Plaintiff claims the failure to promote him to one of the two senior bricklayer positions is an adverse employment action. (Doc. 25, at 16). Plaintiff applied for the senior bricklayer position on February 25, 2018. (Doc. 24-22). On April 30, 2018, Plaintiff sat for an interview and underwent a skills test for the position. (Doc. 24-1, at ¶ 10). Plaintiff scored second out of three qualified applicants. (Doc. 24-25). However, only the top scoring applicant, Caucasian male Scott Lewandowski, was ultimately promoted. (Doc. 24-1, at 2). The record shows, when viewed in a light most favorable to the Plaintiff, Defendant opened two senior bricklayer positions to be filled. (Doc. 25-4).

### STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to

create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

### DISCUSSION

Plaintiff alleges that Defendant, City of Toledo, committed race/color discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and O.R.C. § 4112, *et seq*. Because Ohio's discrimination and retaliation statutes mirror federal law, the state and federal claims are to be examined under the same analysis.

Preliminary Issues

At the outset, the Court turns to Plaintiff's Motion to Strike (Doc. 29), Defendant's Motion for Leave (Doc. 30), and Plaintiff's Motion for Leave to File a Sur-Reply (Doc. 28), as the outcome of these motions dictates what evidence may be available for consideration at the summary judgment stage.

*Motion for Leave to File Sur-Reply*

"Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially when new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Conteers LLC v. City of Akron*, 2021 U.S. Dist. LEXIS 13868, *16 (N.D. Ohio 2021) (quoting *Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014)) (internal citations omitted). "It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the opposition." *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004) (citing *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002)).

In his Motion for Leave to File a Sur-Reply, Plaintiff argues Defendant improperly raised four new arguments on Reply not present in its underlying Motion. (Doc. 28, at 4). Plaintiff points

6

to the following four arguments: (1) Plaintiff was denied the senior bricklayer position due to his record of discipline; (2) Plaintiff was not promoted due to the Civil Service Rules; (3) Robin Wilson was deficient in her work; and (4) Badreddine did not discipline Ortyl nor Plaintiff. *Id.*

In its Motion for Summary Judgment, Defendant argued Plaintiff was not discriminated against when Lewandowski won promotion to the senior bricklayer position over Plaintiff because Lewandowski scored higher on the structured interview and skills test. (Doc. 24, at 11-12). In response, Plaintiff argued (1) the structured interview and skills test was a pretextual tool "used by Mr. Pratt to 'weed out' unwanted candidates" (Doc. 25, at 9-10); and (2) even if Lewandowski was the most qualified, Defendant's failure to promote Plaintiff to the second position is a materially adverse action. *Id.* at 10. In Reply, Defendant addressed these two counter points in turn, arguing (1) the test was not pretextual and followed City policy in accord with the Civil Service Rules (Doc. 27, at 3-4) ; and (2) the fact that there is a vacant posting does not automatically mean the position must be filled, and more on point, Plaintiff was deemed unsuitable for the position because he would be required to work in Sewers with coworkers who had filed complaints against him. *Id.* at 5.

Defendant is not raising either issue for the first time in Reply, but instead is addressing Plaintiff's theories raised in opposition. Plaintiff raised the argument the test was pretextual discrimination and is not standard practice for the City, giving rise to indirect evidence the test was pretextual. (Doc. 25, at 16). Plaintiff further directed this Court's attention to the Local 7's rules and cited to the Civil Service Commission Rules. *Id.* Defendant responded by pointing to its policies set forth in the Civil Service Rules. (Doc. 27, at 3-4). Defendant's argument in Reply is in direct response to the arguments raised, and authority cited by reference, in Opposition. This is permissible in Reply, and does not warrant this Court granting leave to Sur-Reply.

7

Likewise, Defendant states throughout its Motion for Summary Judgment that the decision to promote only Lewandowski, who scored highest on the April 30, 2018 interview, is not an "adverse employment action." (Doc. 24, at 9). Indeed, Defendant references comparable instances where a Caucasian employee was not promoted over an African-American employee where the African-American employee scored higher on the test. (Doc. 24-1, at ¶ 56). This argument by Defendant is responding to Plaintiff's deposition testimony that Lewandowski's promotion evidenced racial discrimination against him, because he believed Lewandowski was unqualified, yet has not put forth any evidence supporting this conclusory belief. Plaintiff raised for the first time in Opposition the issue of Defendant's failure to promote him to the second position as evidence of retaliation. (Doc. 25, at 16). Because "it is . . . settled that a party may respond in a reply to arguments raised for the first time in opposition to a motion", Defendant's argument relating to Plaintiff's unsuitability for the second senior bricklayer position is properly addressed in the Reply. *Raimey v. City of Niles*, 2022 U.S. Dist. LEXIS 3907, *3 (N.D. Ohio 2022) (citing *In re: Firstenergy Corp. Sec. Litig.*, 316 F. Supp. 2d at 599). If this Court adopted Plaintiff's position, it would upset the scheme set forth in the Federal Rules of Civil Procedure by allowing non-moving parties to raise arguments opposing the motion that would either go unrebutted or always warrant a Sur-Reply. This Court declines to do so.

Plaintiff's final two points, relating to the qualifications of Robin Wilson and the dissimilar nature of Ortyl's discipline, also do not warrant the granting of Sur-Reply. The qualifications of Robin Wilson were at the forefront of Plaintiff's Opposition brief (Doc. 25, at 9); there is no unfairness to Plaintiff by Defendant directly addressing this in his Brief. Similarly, Defendant discussed directly in the underlying Motion shortcomings of Ortyl as a comparator (Doc. 24, at 10); and then responded in its reply to Plaintiff's counter-argument. (Doc. 25, at 14; Doc. 27, at 4-

5). There is no new argument raised. *Id.* Further, there is no prospect of unfairness when Plaintiff referenced Ortyl at length throughout discovery and in his Opposition briefing.

Because Defendant's Reply was proper, Plaintiff is not entitled to a Sur-Reply, and thus, Plaintiff's Motion for Leave is denied.

*Motion to Strike*

"The Sixth Circuit has set forth a two-step analysis for district courts deciding the admissibility of a post-deposition affidavit at the summary judgment stage." *M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 2020 U.S. Dist. LEXIS 74270, *23 (N.D. Ohio 2020) (citing *Aerel, SRL v. PCC Airfoils, LLC*, 448 F.3d 899, 908 (6th Cir. 2006)). First, the trial court must determine whether the affidavit directly contradicts prior deposition testimony. A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. *Id.* If, on the other hand, there is no direct contradiction, then the court should not strike or disregard that affidavit unless the court determines the affidavit constitutes an attempt to create a sham fact issue. *Id.* Further, an undated affidavit is properly stricken in certain instances. *Compare Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) (excluding from consideration undated affidavits), *McGruder v. Metro. Gov't of Nashville & Davidson Cty.*, 2020 U.S. Dist. LEXIS 142666, *26 (M.D. Tenn. 2020) (concluding *Bonds* is overruled by statute). However, if a party shows cause, an amended affidavit may be considered by a court, even if late. *Cf.*, *AT&T Corp. v. Overdrive, Inc.*, 2007 WL 315709, at *4 (N.D. Ohio 2007) ("A district court has the discretion to refuse [or] to accept untimely affidavits") (citing *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1446 (6th Cir. 1993)).

With its Reply in Support of Summary Judgment, Defendant attached the Affidavit of Alan Bannister. (Doc. 27-1). Plaintiff filed a Motion to Strike the affidavit in response. (Doc. 29). Defendant then opposed Plaintiff's motion (Doc. 31); and at the same time filed leave to amend

the affidavit instanter. (Doc. 30). In his Motion to Strike, Plaintiff raises three arguments. First, Plaintiff argues the entire affidavit should be stricken because it is undated, and thus, defective. (Doc. 29). Second, Plaintiff asserts certain testimony should be stricken for the reason Bannister lacks personal knowledge. *Id.* Lastly, the testimony must be stricken because it contradicts Bannister's deposition testimony. *Id.* The amended affidavit submitted by Defendant cures most of these issues, but some testimony remains contested. (Doc. 33).

Considering first the lack of date in the original affidavit (Doc. 27-1); Defendant concedes the defect, noting the failure to remove the "x" placeholder, and citing accidental oversight. (Doc. 31, at 2). Because the mistake is harmless, Defendant corrected the mistake within a reasonable time (Doc. 30-1), and also because Defendant largely removed the contested testimony in line with Plaintiff's Motion to Strike (as discussed below), this Court finds good cause is shown, and the amended affidavit is proper for consideration at summary judgment. Each contested paragraph is now reviewed in turn.

Paragraph thirteen, as amended, reads as follows: "It is my understanding that Ms. Crosby had an extensive history of investigative experience." (Doc. 30-1, at ¶ 13). This testimony is wholly consistent with affiant's deposition testimony. (Doc. 25-11, at 71-73). Further, Bannister's deposition shows he does possess sufficient personal knowledge to testify on the matter. *Id.* Thus, paragraph thirteen is proper testimony.

Paragraph fourteen, as amended, states: "Ms. Wilson conducted additional interviews of approximately 10 other employees, some of which I participated in." (Doc. 31-1, at ¶ 14). The amendment to this paragraph echoes Bannister's deposition testimony, eliminating the concerns raised by Plaintiff. (Doc. 25-11, at 24-25). Paragraph fourteen is proper testimony.

The amended affidavit entirely removes paragraph twenty-nine. (Doc. 31-1).

Paragraph forty-four of the amended affidavit pertinently states: "At the time of my deposition I did not recall the specifics of these vacancies nor the details contained within my final report since I had not read that report in a few years. . . . On page 9 of my report I note in footnote 3 that there was only 1 vacancy requisition in effect during the times in question." (Doc. 31-1). Because Plaintiff introduced Alan Bannister's "final report" as Plaintiff's Exhibits Y and Z in the Bannister deposition (Doc. 25-11, at 72-75), merely directing this Court's attention to the record is not new, or inconsistent, testimony.

Similarly, paragraph forty-six of the affidavit is a direct echo of Bannister's deposition testimony. Doc. 31-1, at ¶ 46; Doc. 25-11, at 76.

Simply put –, all the testimony Plaintiff correctly pointed out to this Court to be inconsistent with Bannister's deposition in the original affidavit is removed in the amended version – the amended paragraphs in the affidavit add no novel evidence to the record before the Court, and instead, returns Bannister's testimony to the same given during the deposition. Further, there is no "sham fact issue" at play because the amended affidavit offers no new information. *Cf., Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 963 (6th Dist. 2007). As a matter of practicality, the outcome sought in Plaintiff's Motion to Strike was satisfied by way of Defendant's Motion for Leave to File Instanter.

For these reasons, Defendant's Motion for Leave (Doc. 30) is granted, and Plaintiff's Motion to Strike (Doc. 29) is denied.

<u>Retaliation</u>

Plaintiff alleges retaliation in Counts II, IV, and VI of his Complaint. (Doc. 3, at 6, 8, 10). These claims are brought under both federal and state law, specifically Title VII, 42 U.S.C. § 1981, and Ohio Revised Code § 4112. *Id.* For each, Plaintiff alleges Defendant retaliated against him while he was engaged in the protected activity of formally opposing being treated differently

11

because of his race/color. (Doc. 3, at 6). Plaintiff alleges four materially adverse actions to support his claim of retaliation: (1) failure to promote him to the position of bricklayer; (2) papering his file so he could never be promoted above his current position; (3) involuntarily transferring him to his current position; and (4) treating similarly situated white employees more favorably than Plaintiff because of his protected activity. *Id.*

"To make a prima facie showing of Title VII retaliation, an employee must show '(1) he ... engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Laughlin v. City of Cleveland*, 633 F. App'x 312, 315 (6th Cir. 2015) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)). "If the employee makes this showing, the burden shifts to the employer to articulate a 'legitimate, nondiscriminatory reason for its actions.'" *Id.* (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008)). "If the employer meets this burden, the employee must demonstrate that the legitimate reason offered by the employer 'was a pretext designed to mask retaliation.'" *Id.* As recognized by the Supreme Court in *CBOCS W., Inc. v. Humphries*, "42 U.S.C. § 1981 encompasses claims of retaliation." 553 U.S. 442, 457 (2008). Indeed, "[t]he elements of a retaliation claim under § 1981 are the same as those under Title VII." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019) (citing *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004)). Similarly – "[t]his framework also applies to retaliation claims under Ohio Revised Code § 4112." *Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 619 (6th Cir. 2012) (citing *Greer–Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007)). Thus, Plaintiff's retaliation claims are properly considered under a single analysis.

*Prima facie case*

In its motion, Defendant concedes the issue on the first two elements of Plaintiff's prima facie case, acknowledging Plaintiff engaged in a protected activity that was known to the Defendant. (Doc. 24, at 8). However, Defendant disputes Plaintiff can meet the third and fourth elements – that Defendant took an action that was "materially adverse" to Plaintiff, and there was a causal connection between the protected activity and the materially adverse action. *Laughlin*, 633 F. App'x at 315.

*Adverse employment action*

In order to establish the adverse employment action element, Plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (quoting *Garner v. Cuyahoga Cty. Juv. Ct.*, 554 F.3d 624, 639 (6th Cir. 2009)). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

Here, two of the alleged materially adverse actions – Plaintiff's file being "papered" and treating white employees more favorably – lack evidentiary support. Plaintiff has not brought this Court's attention to any evidence showing Defendant's file was being "papered" (which signals a purposeful act), and the fact Plaintiff was faced with numerous workplace complaints following his and Baddredine's competing complaints does not create a genuine issue of material fact to that end. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) ("mere conclusory and unsupported allegations, rooted in speculation, do not meet a nonmoving party's burden to defeat summary judgment") (internal citations omitted). Likewise, Plaintiff does not provide any

evidence regarding more favorable treatment of white employees in the context of retaliation. *See generally*, Doc. 25.

However, there is sufficient evidence to establish Plaintiff faced a materially adverse action regarding his permanent transfer out of Sewers, and also the failure to promote. First, there is agreement among the parties Plaintiff was transferred from Sewers to the Department of Public Service, where his duties changed from skilled bricklaying, with prospects of promotion to a senior bricklaying position, to a predominantly janitorial role. Doc. 24 at 7; Doc. 25 at 1-2. Indeed, Sixth Circuit precedent dictates that an involuntary transfer may be considered materially adverse*. Mys v. Michigan Dep't of State Police*, 590 F. App'x 471, 481 (6th Cir. 2014); *Deleon v. County of Kalamazoo*, 739 F.3d 914, 918–19 (6th Cir. 2014) (finding that an employee's involuntary transfer to a position, for which he had actually applied in the past, could nonetheless be viewed "materially adverse" action in light of the circumstances surrounding the assignment). Here, a reasonable jury could find the transfer from a skilled bricklayer to the vastly diminished responsibilities of a janitorial worker, even at the same seniority and paygrade, was a constructive demotion. *Deleon*, 739 F.3d at 920 (citing *Sharp v. City of Houston*, 164 F.3d 923, 934 (5th Cir. 1999) (reversing grant of summary judgment where "[t]he jury could have found that the transfer . . . was a constructive demotion")); *Siewertsen v. Worthington Indus., Inc.*, 783 F. App'x 563, 572 (6th Cir. 2019) (citing *Spees v. James Marine, Inc.*, 617 F.3d 380, 392 (6th Cir. 2010) (holding that a reasonable jury could find an adverse employment action where an employee was transferred to a position that, among other things, required less training and was less challenging)). Similarly, in the light most favorable to Plaintiff, a reasonable jury could find a second senior bricklayer position was available and Plaintiff was the candidate most qualified for the promotion to the second vacancy. Doc. 25-4; Doc. 25-10. Thus, the deprivation of opportunity to advance within Plaintiff's

14

chosen profession represents an adverse employment action. *Siewertsen*, 783 F. App'x at 572. A reasonable juror could conclude Plaintiff faced adverse material actions.

   *Causation*

However, the last prong of Plaintiff's prima facie case – a causal connection between the protected act and the materially adverse action – is not satisfied under the Sixth Circuit's framework. This element requires proof, "even at the prima facie stage, that the unlawful retaliation would not have occurred but for [Plaintiff's] protected activity." *Wingo v. Michigan Bell Tel. Co.*, 815 F. App'x 43, 46 (6th Cir. 2020) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013); *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 770 (6th Cir. 2015) (en banc)). Plaintiff attempts to focus this Court's attention singularly on the March 5, 2018 and March 8, 2018 D&I complaints filed crossly between Badreddine and Plaintiff. (Doc. 25, at 19-20). However, the adverse employment action did not occur until Plaintiff was permanently transferred in August 2018 and when he was denied promotion in or around September 11, 2018. *Id.* at 20.

When a court considers causal connection, "temporal proximity alone is generally not enough to establish the prima facie element[.]" *Wingo*, 815 F. App'x at 46–47 (citing *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 629 (6th Cir. 2013); *Newton v. Ohio Dep't of Rehab. & Corr.-Toledo Corr. Inst.*, 496 F. App'x 558, 567 (6th Cir. 2012) (noting that "causation, not temporal proximity itself . . . is an element of plaintiff's prima facie [Title VII retaliation] case"); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999) (observing that temporal proximity, by itself, "will not support an inference [of retaliation] in the face of compelling evidence"). "This is especially so when an intervening act disrupts the purported causal chain between a protected act and an adverse employment action." *Wingo*, 815 F. App'x at 47 (plaintiff failed to establish a prima facie case of retaliation because he committed intervening workplace violations between the 2015

EEOC complaints and his eventual termination. Thus, the causal chain was broken, and with it, the inference of temporal proximity).

Plaintiff filed a race discrimination charge against Defendant (or Defendant's agent) on March 8, 2018. (Doc. 25, at 6). Between his complaint and the adverse material actions in August and September 2018, Plaintiff incurred a string of workplace violations, including the following:

- On May 23, 2018, Plaintiff's conduct at a union meeting resulted in four City employees filing a workplace violence charge against him. (Doc. 24-22, at 36-37). Of note – Plaintiff provides no evidence disputing this incident, and instead argues the conduct he displayed "was a common occurrence but only [he] was admonished." (Doc. 25, at 20). Plaintiff was charged with disruption of the workplace, misconduct, and conduct unbecoming of a City of Toledo Employee (Doc. 24-16).

- On June 18, 2018, Plaintiff drove by a city owned piece of equipment that fell from another crew's truck, and was eventually stolen. (Doc. 24-22, at 35-36). Plaintiff was charged with dereliction of duty, conduct unbecoming of a city employee, and jeopardizing the safety and welfare of Citizens of Toledo. (Doc. 24-32). Although Plaintiff states he was charged with the mistakes of the other crew, he acknowledges the underlying events of the charge to be true. (Doc. 24-22, at 35-36).

- On April 11, 2018, Plaintiff secretly recorded conversations with City employees. (Doc. 24-22, at 37-38). Plaintiff was charged with violating "AP # 37 "Surreptitious Recording, Photographing, Picture Taking[.]" and conduct unbecoming a City of Toledo Employee. (Doc. 24-31). Plaintiff fully admits to this charge, but argues the rule violates his rights. (Doc. 24- 22, at 38).[1] Also of note, Plaintiff told City employees he did urinate behind the vehicle on March 3, 2018, although he now disputes this admission. (Doc. 24-22, at 60-61).

- Plaintiff was charged with Conduct Unbecoming of a City Employee and misconduct resulting from a July 25, 2018 incident with his supervisor, Brian Fodor. (Doc. 24-33). However, Plaintiff has presented evidence refuting the veracity of this incident. (Doc. 24-22, at 34).

---

1. The Court acknowledges this violation for the limited scope of considering whether the causal chain remained intact – or more simply – whether there were intervening causes showing Plaintiff was terminated for reasons other than engaging in his protected activity. This Court need not address Plaintiff's legal argument regarding the legality of Defendant's policy which outright bans recording conversations secretly at this time.

16

Because the above-mentioned conduct violations are supported in the record, and Plaintiff does not dispute the factual scenarios (barring the Fodor incident noted above), Plaintiff is not afforded an inference of retaliation based on temporal proximity. *See Wingo*, 815 F. App'x at 47. Thus, Plaintiff must provide evidence other than temporal proximity to establish his prima facie case.

Plaintiff directs this Court's to Robin Wilson's conclusions and reports (Doc. 25-3); testimony Plaintiff states describes institutional discrimination (Doc. 25-12); and Julianne Badreddine instructing payroll clerks to not provide Plaintiff with alternate hour information. (Doc. 25-11, at 60-63). However, none of these sources provide evidentiary support to Plaintiff's retaliation claim.

First, the Wilson draft report (Doc. 25-3) is limited in scope to the "sexual harassment" incident where Plaintiff was accused by Badreddine of urinating in public and of making sexually inappropriate gestures. *Id.* at 14-16. Wilson's report concludes that the sexual harassment accusation against Plaintiff was "not credible." *Id.* at ¶ 21. However, Wilson's report includes multiple witness statements that substantiate the May 23, 2018 union hall outburst by Plaintiff where he kicked over chairs in the "heat of frustration". *Id.* at ¶ 35. Further, the report does not touch on the other workplace incidents, as discussed above. *See generally, id.* Thus, even in the best light, the Wilson report does not provide evidence of causal connection between an adverse material action and Plaintiff's protected activity because it is too limited in focus, and separately, supports the union hall complaint against Plaintiff. Also, the Wilson report fails to raise a genuine issue of material fact because it was drafted without knowledge of key evidence, such as Plaintiff's own recorded statement that he did urinate behind the City truck in public, where Plaintiff stated: "I took a piss behind the garbage truck and I came out and looked, and I didn't know that was her, then I got in my Lowboy and I backed up and I was like, 'Oh, that's Julianne.' And I took off." (Doc. 24-40, at 3). Because of the limited scope and incomplete evidence before Wilson, her

17

conclusion Plaintiff did not urinate or make sexual gestures is not enough to overcome summary judgment. Simply – it does not provide evidentiary support to bridge the causal chain between the protected activity, over the multiple workplace violations brought against Plaintiff in Summer 2018, to the adverse material actions in August and September of 2018.

Second, Plaintiff's reliance on the deposition testimony of Calvin Harris is misplaced because Harris testified he had no involvement in the promotion testing process during the pertinent timeframe. (Doc. 25-12, at 49-50). Harris noted his opinion and "what he felt in his heart" at the time was the tests used for promotion were unfair because racial minorities routinely scored lower and were less likely to be promoted as a result. *Id.* However, Harris pushed back against Plaintiff's counsel in the deposition when asked if the tests were a pretextual tool used to promote Caucasian candidates even if they possessed less ability to do the job. *Id.* at 48. Thus, Harris's feelings that he could improve the fairness of the hiring process is not evidence supporting Plaintiff's claim of retaliation, as Harris made no such representation.

Lastly, Plaintiff relies on the inadmissible speculative testimony of Alan Bannister to support his contention that Badreddine instructed payroll clerk Laura Vargyas to not provide Plaintiff with his alternate hour information. (Doc. 25-11, at 61-63). In his deposition, Bannister recalled Vargyas's statement regarding Badreddine's instruction. *Id.* However, Bannister has no personal knowledge of this instruction because he was not present for the conversation between Badreddine and Vargyas. *Id.* Because "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter", Bannister's testimony is inadmissible on summary judgment to prove the contents of a conversation he did not personally observe. Fed. R. Evid. 602. "Parties must demonstrate that their summary judgment affidavits are made on personal knowledge." *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007) (citing *Sperle v. Michigan Dep't of Corr.*, 297 F.3d 483, 495

(6th Cir. 2002). Alternatively, insofar as Plaintiff introduces and relies upon Vargyas's statement itself, this is plainly hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Thus, the statement attributed to Vargyas is inadmissible hearsay as used for the purpose of proving Badreddine denied Plaintiff benefits. *Giles*, 241 F.R.D. at 471 ("Courts cannot consider inadmissible hearsay . . . when ruling on a summary judgment motion.") (citing *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997)). Setting this conclusion aside for the sake of argument, Plaintiff still falls short of raising a contested issue of fact because Plaintiff signed a waiver of overtime so he could work at Jeep, and Plaintiff has offered no evidence tending to show overtime benefits were taken away from Plaintiff at the behest or direction of the Defendant. (Doc. 24-22, at 55-57). And finally, the overtime period in question is limited to the 2018 snow and ice season, which took place after the several intervening workplace violations. *Id.* at 56. Thus, there is no causal connection between Plaintiff's protected activity and the adverse material actions claimed here.

Because Plaintiff has not met his burden of providing evidentiary support to show a causal connection between his protected activity and any adverse material action, Plaintiff is unable to establish a prima facie case of retaliation.

Discrimination

Plaintiff brings claims of discrimination in Counts I, III, and V of his Amended Complaint under both state and federal law. Specifically – Plaintiff's claims are pled under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and Ohio Revised Code 4112, *et seq*. (Doc. 3, at 4-8). In each discrimination claim, Plaintiff alleges he is a member of a protected class, was subject to discrimination based on his race on account he was treated differently than similarly situated Caucasian employees, discriminated against when Defendant

failed to promote him, and discriminated against because Caucasian employees were not treated with the same indignity. *Id.*

Title VII expressly prohibits employers from treating employees differently according to their race. *See* 42 U.S.C. § 2000e-2(a)(1). When a plaintiff does not put forth direct evidence of racial discrimination, this Court applies the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). This framework places the initial burden on Plaintiff to establish his prima facie case. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). To satisfy this burden, the plaintiff must show "(1) [he] was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (internal citations and quotations omitted). If the plaintiff can establish a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant articulates such a reason, the burden shifts back to the plaintiff to demonstrate the proffered reason was a mere pretext for discrimination. *Id.* at 253.

"The elements of [a] *prima facie* case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n. 5 (6th Cir. 2000)). Similarly, "federal case law governing Title VII actions is generally applicable to cases involving alleged violations of Chapter 4112." *Id.* (citing *Williams v. Ford Motor Co.*, 187 F.3d 533, 538 (6th Cir. 1999)). Thus, all of Plaintiff's discrimination claims are properly analyzed under the Title VII framework.

20

Because the Parties agree there is no direct evidence of discrimination, this case must be analyzed under the burden-shifting analysis. Doc. 25, at 17; Doc. 24, at 5.

*Prima Facie Case*

Defendant contends it is entitled to summary judgment because Plaintiff has no evidence to create a genuine issue of material fact regarding the third and fourth prongs of his prima facie case. (Doc. 24, at 5-6). Specifically, Defendant asserts Plaintiff cannot show he suffered an adverse employment action or that he was treated differently than similarly situated employees of a different race. *Id.* Defendant "acknowledges that Mr. Sanders is both in a protected class and that he was qualified for the SC&R position." *Id.*

Plaintiff asserts he faced adverse employment actions when he was transferred away from his position as a bricklayer to janitorial work, and secondly, when he was denied promotion to the senior bricklayer position. (Doc. 25, 11-13). Defendant argues there is no adverse action because Plaintiff was never without pay and never faced loss of income, benefits, or seniority. (Doc. 27, at 6-7). Further, Defendant argues denying promotion is not an adverse action because Defendant had legitimate business reasons, namely that Plaintiff's repeated workplace violations made him unsuitable to continue working within Sewers. *Id.* Because the Sixth Circuit has long recognized that a forced transfer to a less skilled position may be an adverse action, Plaintiff has carried his burden on this prong of the prima facie case. "Even if a reassignment is not paired with a salary or work-hour change, it can nonetheless be considered an adverse employment action where there is evidence that the employee received a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Blackburn v. Shelby Cnty.*, 770 F. Supp. 2d 896, 921 (W.D. Tenn. 2011) (citing *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 886 (6th Cir. 1996)) (internal quotation marks omitted). "Whether a particular reassignment is materially adverse depends upon the

21

circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)). A reasonable juror could find the transfer to janitorial work significantly diminished Plaintiff's material responsibilities, resulting in an adverse action. Likewise, this transfer stifled any opportunity for Plaintiff to receive promotion within Sewers, which indicates adverse action under this unique set of facts. *Blackburn*, 770 F. Supp. 2d 921. Thus, Plaintiff satisfies the first three prongs of his prima facie case.

To satisfy the similarly-situated prong, the Sixth Circuit historically required plaintiffs to point to "comparable[ ]" employees who are "similarly-situated *in all respects*", meaning individuals who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis added). The Sixth Circuit has since clarified that "[a] court's formulation of the similarly-situated inquiry should not be exceedingly narrow", and individuals are considered similarly situated "if they are similar (though not identical) in *all relevant respects*." *Lynch v. ITT Educ. Servs., Inc.*, 571 F. App'x 440, 444 (6th Cir. 2014) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)) (emphasis added). Thus, "the appropriate test is to look at [the *Mitchell*] factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Jackson v. FedEx Corp. Servs.*, 518 F.3d 388, 396 (6th Cir. 1998) (internal citations omitted).

Plaintiff attempts to satisfy this prong by pointing to William Ortyl. (Doc. 25, at 13). Ortyl is a Caucasian employee working for the Defendant in Sewers. (Doc. 25-13, at 63). On February 21, 2018, a complaint was filed against Ortyl from a private citizen. *Id.* The citizen complained that when Ortyl was working outside of her home, he exposed himself and urinated on the ground.

*Id.* at 57-59. Ortyl acknowledged the event. *Id.* Badreddine and David Pratt investigated the matter. *Id.* Ortyl was charged on March 5, 2018 for the incident, and separately, on March 13, 2018, for failure to notify his supervisor about the incident. *Id.* Ortyl was suspended without pay for ten days and was placed on the progressive discipline policy for two years. *Id.* at 61-63. At the time of the discipline, Ortyl admitted to the infraction and agreed to the discipline. *Id.*

Plaintiff's reliance on Ortyl as a "comparator" falls short for two reasons. First – Ortyl and Plaintiff did not engage in the same conduct in all material respects. *See Mitchell*, 964 F.2d at 583. Namely, Plaintiff too narrowly focuses on the March 3, 2018 incident where he was accused of urinating outside and making sexually inappropriate gestures. (Doc. 25, at 4). But Plaintiff was not only charged with this singular incident. Indeed, he was also charged with workplace intimidation related to the February 2018 incident (Doc. 24-3); the March 3 incident (*Id.*); the May 23, 2018 workplace violence for kicking over chairs in anger (Doc. 24-4); secretly recording his conversations with City employees (Doc. 24-31); failing to guard expensive City equipment (Doc. 24-32); and an incident with his supervisor (Doc. 24-33). Simply – the adverse actions set forth by Defendant are tied to workplace violence and the supposed inability to civilly work with other employers in Sewers. The transfer order itself references the workplace violence charge resulting from Plaintiff's outburst at the union hall, not the incident with Badreddine. (Doc. 24-19). Comparing Defendant's discipline of Plaintiff for all the above-mentioned incidents to Ortyl's public urination discipline is not sufficient under *Mitchell*. 64 F.2d at 583. Further, even looking solely to the March 3, 2018 incident, Ortyl was accused of urinating in sight of private citizens (Doc. 25-13, at 60), while Plaintiff was accused of urinating in public and making sexually inappropriate gestures to his coworker. (Doc. 24-3). Even adopting Plaintiff's framing of Ortyl as a comparator, he does not carry the day on the fourth prong of the test because Ortyl's actions in

no way constitute the harassment of a coworker, which could legitimately and reasonably result in different discipline than mere public urination, such as separating the two employees.

Second, Plaintiff is unable to meet the fourth prong of his prima facie case because Ortyl received an arguably more severe punishment. Ortyl was suspended without pay for ten days and put on a twenty-four-month probationary period. (Doc. 25-13, at 62). Meanwhile, Plaintiff was never put on unpaid leave, and there is no evidence or argument raised that Plaintiff was put on a probationary period. (Doc. 25, at 14). The only possible "less favorable" outcome is that Ortyl was allowed to return to Sewers. Plaintiff has not presented evidence showing Ortyl, the Caucasian employee, was treated more favorably.

Because Plaintiff is unable to show a Caucasian employee who engaged in the same conduct in all relevant respects was treated more favorably, he has not met his burden on the fourth prong of his prima facie case, and Defendant is in turn entitled to summary judgment on the discrimination claims.

Burden Shifting

Assuming *arguendo* Plaintiff satisfied his prima facie case with respects to either his discrimination or retaliation claims, Defendant still prevails on summary judgment under the burden shifting analysis. *Laughlin*, 633 F. App'x at 315 (quoting *Niswander*, 529 F.3d at720).

If the employee makes a showing to satisfy the prima facie elements, "the burden shifts to the employer to articulate a 'legitimate, nondiscriminatory reason for its actions.'" *Id.* (quoting *Imwalle*, 515 F.3d at 544. If the employer meets this burden, the employee must demonstrate that the legitimate reason offered by the employer is pretext masking discriminatory or retaliatory reasons. *Burdine*, 450 U.S. at 252-53

Defendant articulated legitimate, non-discriminatory reasons for Plaintiff's transfer by raising and supporting the string of workplace infractions Plaintiff was charged with between

March and July of 2018. *See* (Doc. 24-3); (Doc. 24-4); (Doc. 24-31); (Doc. 24-32); (Doc. 24-33) (as discussed above). Indeed – Defendant has clearly met its burden in light of the multiple workplace violations, including the May 23, 2018 violent outburst, to which Plaintiff has offered no evidence to challenge the truthfulness of the complaint.

The burden would then shift back to Plaintiff to prove by a preponderance of evidence that Defendant's proffered reason was a pretext for discrimination. *Reynolds v. FCA US LLC*, 2021 WL 3737955, at *6 (N.D. Ohio Aug. 24, 2021) (citing *Burdine*, 450 U.S. at 253). Plaintiff can establish pretext by showing Defendant's justification "(1) has no basis in fact; (2) did not actually motivate [his transfer]; or (3) was insufficient to warrant [his transfer]." *Id.* (citing *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502 (6th Cir. 2007) (internal citations omitted). "[A] reason cannot be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (internal alteration, citation, and quotation omitted). Thus, at this stage, Plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [Defendant's] explanation and infer that [Defendant] intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (internal citations and quotations omitted).

Plaintiff asserts Defendant's reason for denying promotion was pretextual because the "competitive test" given has not been used in ten years, and more directly, because there were two vacant positions and Plaintiff was the second highest scorer on the test, so he earned promotion. (Doc. 25, at 9-10). Plaintiff does not provide any admissible evidence to show the "test" was used to "weed out" racial minorities. The only evidence offered is the testimony of Calvin Harris, who stated this was only his opinion and he was not involved in the testing. (Doc. 25-12, at 49-50). Because Harris admittedly has no personal knowledge of the purpose of the formal test, his

25

testimony cannot be considered by the Court as evidence for deciding a summary judgment motion. *Hitachi Med. Sys. Am. v. Horizon Med. Group*, 2008 U.S. Dist. LEXIS 123313, *11 (N.D. Ohio) ("speculation is not admissible").

Plaintiff also points to the second vacancy of the senior bricklayer position to prove pretext. However, the evidence shows Plaintiff was denied promotion and removed from Sewers as a result of his numerous workplace violations between May and July of 2018. While Plaintiff disputes the fairness of the disciplinary outcome, there is no evidence before this Court disputing the factual circumstances of multiple infractions. Most notably, Plaintiff has not presented evidence refuting the union hall incident where he kicked over chairs in a violent outburst. (Doc. 25, at 20). Indeed, characterizing his outburst as "commonplace", but not directing this Court's attention to any instance where a Caucasian employee engaged in the same conduct without receiving discipline, is insufficient to show Defendant's decision to transfer Plaintiff was for a non-legitimate and discriminatory reason. Likewise, Plaintiff's proposition that Sewers management was institutionally racist is not supported by evidence. *Id.* Instead, the testimony by Calvin Harris cited by Plaintiff shows, in Harris's opinion, there was racial division at Sewers and he made it his priority to correct the division. (Doc. 25-12, at 49-50). The evidence shows Plaintiff was unable to work amicably with the other employees in Sewers. *See, e.g.*, Doc. 24-4. If promoted, Plaintiff would be back working with the very same coworkers who filed workplace violence complaints against him as a result of the May 23 union hall incident (which Plaintiff does not dispute). Thus, no reasonable jury could find that "but-for" his protected trait, Plaintiff would not have been transferred in light of the unrebutted complaints against him.

For these reasons, even assuming for the sake of argument Plaintiff was able to satisfy the prima facie elements of either his retaliation or discrimination claims, summary judgment in Defendant's favor is still warranted.

### Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 24) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendant's Motion for Leave to Amend Instanter (Doc. 30) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that all other pending motions be, and the same hereby are, DENIED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE
